**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:19-cv-01112-JLK**

**SAMANTHA CHARLOT, on behalf of herself and all similarly situated persons,**

**Plaintiff,**

**v.**

**ASCENDA USA INC. d/b/a 24-7 INTOUCH,**

**Defendant.**

---

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

---

Plaintiff, Samantha Charlot, individually and on behalf of all Opt-In Plaintiffs and others similarly situated ("Plaintiff" or "Charlot" or "Plaintiffs" or "Plaintiffs and the Potential Plaintiffs"), and Defendant Ascenda USA Inc., d/b/a 24-7 InTouch ("Defendant" or "24-7 InTouch") (collectively, the "Parties"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, is fair and equitable to all parties concerned, and contains a reasonable award of attorneys' fees and costs.

Plaintiff Charlot respectfully requests that the Court issue an order: (1) approving the settlement as set forth in the Confidential Settlement Agreement and Release ("Agreement");[1] (2) approving the proposed Notice of Settlement (attached as Exhibit 2 of the Agreement) and directing its distribution, and distribution of the settlement proceeds in accordance with the Agreement,; (3)

[1] The Agreement is attached to the Parties' Motion for Leave to File Confidential Settlement Agreement Under Seal. Unless otherwise indicated, all capitalized terms have the definition as set forth in the Agreement.

approving a service award to lead Plaintiff Samantha Charlot; (4) approving Plaintiff's request for attorneys' fees, costs, and expenses; and (5) dismissing this Lawsuit with prejudice.

# I. BACKGROUND

## A. Factual Allegations

24-7 InTouch operates customer service call centers throughout the United States. Plaintiff Charlot was a Customer Service Representative ("CSR") who worked for 24-7 InTouch in Orlando, Florida from approximately January 2016 until November 2016. *See* ECF No. 1. Plaintiff alleges that 24-7 In-Touch violated the FLSA by failing to compensate her for all hours worked and failing to provide the proper amount of overtime for each workweek in which she worked over forty (40) hours. *See id.* Plaintiff further alleges that this policy applied to other similarly situated CSRs working for 24-7 InTouch. Conversely, 24-7 InTouch denies any liability to Plaintiff Charlot, the Opt-In Plaintiffs that have joined the litigation, and the Potential Plaintiffs for any unpaid back wages or overtime, and asserts that its hourly, non-exempt CSRs were fully and properly compensated under federal and state law.

## B. Overview of Litigation

On January 21, 2019, Plaintiff filed this lawsuit on behalf of herself and other similarly situated CSRs alleging violations of the FLSA. Defendant subsequently answered the lawsuit, denied liability and asserted numerous affirmative defenses. *See* ECF No. 41. The Parties then filed their Proposed Scheduling Order with the Court and exchanged their Initial Disclosures. *See* ECF No. 46.

Soon thereafter, the Parties agreed to mediate this matter with nationally renowned FLSA mediator, Michael E. Dickstein, in Toronto, Ontario, Canada. In preparation for mediation, the Parties engaged in informal document production and openly shared information about Plaintiffs and the Potential Plaintiffs so that Plaintiffs' counsel could meaningfully evaluate Plaintiffs' and the Potential

Plaintiffs' claims. On October 1, 2019, the Parties attended mediation and agreed to settle this matter on a global basis. The terms of the Agreement are discussed in greater detail below.

## II. SETTLEMENT TERMS

### A. Settlement Amount and Allocation

Under the terms of the Agreement, Defendant has agreed to pay a sum certain ("Maximum Settlement Amount") to fully resolve this litigation.[2] Each Plaintiff's *pro rata* share of the Net Settlement Amount will be calculated based upon the number of workweeks that he or she worked for 24-7 InTouch as a CSR during the Class Period.[3] The calculations will be performed as follows:

(1) The Parties will agree on the total number of workweeks for each Collective Class member during the Class Period;

(2) The Claims Administrator will divide the Net Settlement Amount by the total number of workweeks for each member of the Collective Class worked over 74 hours in a bi-weekly pay period during the Class Period to determine the average bi-weekly workweek value "Bi-Weekly Value";

(3) The Claims Administrator will multiply the Bi-Weekly Value by the total number of bi-weekly pay periods each Participating Plaintiff recorded over 74 hours as an hourly CSR during the Class Period to determine the Gross Settlement Payment to which each is entitled.

The Agreement further provides that fifty percent (50%) of all payments constitute alleged wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[4] The remaining fifty percent (50%) constitutes

---

[2] Included in the Maximum Settlement Amount is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, and a service award for Charlot. The remaining funds, after the above described deductions, shall constitute the Net Settlement Amount.

[3] July 1, 2016 through October 1, 2019.

[4] Defendant's portion of all such payroll taxes and withholdings are excluded from the Gross Settlement Amount.

payment for all other alleged damages, including liquidated damages and all other non-wage income, and will be reported on an IRS Form 1099.

In exchange for their share of the Net Settlement Amount, each Participating Plaintiff will agree to release their respective wage-related claims against Defendant. *See* Exhibits 2 and 3 to the Agreement. Each Potential Plaintiff will receive a Notice and Settlement Check indicating their respective share of the Net Settlement Amount. *See* Exhibits 2 and 3 to the Agreement. The Parties agree that both the Notice and the Release, and Waiver Language on the Settlement Check(s) are informative, provide the necessary information about the lawsuit, the claims alleged, the release, and the process to follow to participate in the settlement. *See* Exhibits 1, 2 and 3 to the Agreement. Each Potential Plaintiff will receive their respective portion of the Net Settlement Amount after agreeing to become a Participating Plaintiff by timely negotiating their Settlement Check. Those who elect not to do so will not be bound by the settlement nor will they release any claims they may have against 24-7 InTouch.

**B. Service Award**

In addition to her payment under the allocation formula described above in Section II. A., and in recognition of the services rendered in the litigation, Plaintiff's Counsel has negotiated a modest Service Award for Plaintiff Charlot in the amount of $5,000.00. The amount is well within the range of service awards approved by courts in the Tenth Circuit. *See, e.g., Thompson v. Qwest Corp.*, No. 17-cv-1745, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("[R]easonable incentive payments have become common for class representatives, and . . . for FLSA named plaintiffs as well" and approving a $5,000 incentive award to the named plaintiff who "attached his name to [the] federal lawsuit, making the public and his future employers aware that he filed suit against his former employer" (citations and internal quotation marks omitted)); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (approving $7,500 service payment and collecting cases). In light of her efforts that

resulted in a global settlement on behalf of all current and former CSRs during the Class Period and for executing the General Release, this modest Service Award is reasonable.

**C. Attorneys' Fees and Litigation Costs**

Plaintiff's Counsel seek to recover their attorneys' fees and litigation expenses as part of the Maximum Settlement Fund. The amount is fair and reasonable and will be addressed in greater detail below in Section III. 24-7 InTouch does not contest this amount.

**D. Claims Administration**

The Parties have elected to retain Rust Consulting, Inc. ("Administrator" or "Rust") to administer the settlement. Under the terms of the Agreement, administration costs and expenses incurred by the Administrator are payable out of the Maximum Settlement Amount.[5] Within ten (10) business days of the Court's Order granting this Motion and entering Final Judgment, the Administrator will be responsible for administering the settlement in accordance with the terms of the Agreement, including mailing the Notice and the Settlement Checks, determining the Claimed Amount, and determining all federal, state, and local taxes owed on each of the timely negotiated Settlement Checks.

Plaintiffs' Counsel and Defendant's Counsel will work with the Administrator to take all necessary steps to ensure that the Notice and the Settlement Checks are sent to the correct addresses.

## III.
## ARGUMENT AND AUTHORITIES

**A. The Court Should Approve the Settlement**

The Parties seek approval of a settlement under section 216(b) of the FLSA. When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."

---

[5] Rust has provided a quote and anticipates that the full cost of the settlement administration will not exceed $32,990.00.

*Lynn's Food Stores* v. *United States,* 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). In this District, courts typically approve a proposed FLSA settlement after the parties show that: "(1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Thompson*, 2018 WL 2183988, at *2 (quoting *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-1649, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014). This settlement meets all three of these requirements.

1. There is a *Bona Fide* Dispute

The Agreement resolves a *bona fide* dispute. As discussed above, 24-7 InTouch provides call-center services to its clients throughout the United States. Plaintiff Charlot was a CSR who worked for 24-7 InTouch in Orlando, Florida from approximately January 2016 until November 2016. *See* ECF No. 1. Plaintiff alleges that 24-7 In-Touch violated the FLSA by failing to compensate her for all hours worked and failing to provide the proper amount of overtime for each workweek in which she worked over forty (40) hours. *See id.* Plaintiff further alleges that this alleged policy applied to other similarly situated employees working for 24-7 InTouch throughout the United States.

Defendant disputes that it violated the FLSA. Specifically, Defendant contends that the time and payroll records properly reflect that Defendant paid Plaintiffs and the Potential Plaintiffs for all hours worked, including all hours worked in excess of 40 hours in a workweek, at the proper overtime rate. Defendant further asserts that Plaintiffs and the Potential Plaintiffs recorded all hours worked each workweek, and that all hours were properly paid under the FLSA. Moreover, Defendant vigorously contests whether conditional certification under section 216(b) of the FLSA would be proper given, among other factors, the individualized nature of Plaintiff's and the Potential Plaintiffs' claims. And lastly, Defendant has asserted that in the event a violation of the FLSA was found, that Defendant acted at all times in good faith, including upon advice of counsel, thereby seeking to negate the application of liquidated damages or a finding of willfulness. As such, Plaintiffs and the Potential

Plaintiffs would be limited to a two-year statute of limitations and their respective unpaid back wages, if any.

If Plaintiffs and the Potential Plaintiffs' allegations were ultimately proven correct, even for some limited time period during the Class Period, Defendant would be faced with the prospect of a monetary judgment in favor of Plaintiffs and the Potential Plaintiffs, as well as an obligation to pay attorneys' fees and costs incurred by Plaintiff. If Defendant's arguments were correct, then Plaintiffs and the Potential Plaintiffs would recover no money, and possibly be required to pay Defendant's costs. Moreover, and perhaps and most importantly, the Parties were represented by experienced wage and hour counsel throughout this litigation.

Accordingly, the Court should readily conclude that a *bona fide* dispute between the Parties existed under the FLSA.

2. The Proposed Settlement is Fair and Reasonable

The proposed Agreement is fair and reasonable to all parties. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Manohar v. Sugar Food LLC*, No. 16-cv-2454, 2017 WL 3173451, at *3 (D. Colo. July 26, 2017). Here, the Agreement provides Plaintiff, the Current Opt-In Plaintiffs and the Potential Plaintiffs with adequate compensation for their claims, given the risks present. Courts in the Tenth Circuit regularly look to the fairness factors applied to a proposed collective action settlement under Federal Rule of Civil Procedure 23(e). *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-1884, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013). These factors include: (1) whether the settlement was fairly and honestly negotiated, (2) whether questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the

parties that the settlement is fair and reasonable. *See id.* The proposed Agreement satisfies all of these factors.

Here, the Agreement was formally negotiated during an arms-length mediation with well-respected wage and hour mediator, Michael E. Dickstein. The use of a mediator weighs against a finding of collusion. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Molycorp, Inc. Sec. Litig.*, No. 12 Civ. 292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved" and collecting cases); *Fulton v. TLC Lawn Care, Inc.*, No. 10 Civ. 2645, 2012 WL 1788140, at *4 (D. Kan. May 17, 2012) (finding no evidence of fraud or collusion where parties reached an FLSA settlement with the aid of "an experienced labor-and-employment-law mediator"); *Hobbs v. Tandem Envtl. Solutions*, No. 10 Civ. 1204, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012) (same).

Moreover, there exist disputed questions of law and fact that render ultimate success, for either side, uncertain. The Parties hotly dispute whether Plaintiffs and the Potential Plaintiffs were paid for all hours worked and at the proper overtime rate for all hours worked over forty each week. In addition to the propriety of Defendant's compensation scheme, additional questions involving the statute of limitations and the ability of Plaintiff to carry her burden to show that the three-year statute should apply. *See* 29 U.S.C. § 255(a). Defendant has also asserted that in the event a violation of the FLSA is found, that Defendant acted at all times in good faith, including upon advice of counsel, thereby seeking to negate the application of liquidated damages.

Although Plaintiff believes her case is strong, it is subject to the considerable risk that is inherent in litigation. "The presence of such doubt augurs in favor of settlement because settlement

creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Here, a trial on the merits would involve significant risk as to both liability and damages. Plaintiff would have to establish that the pay scheme at issue failed to compensate her (1) for all hours worked and (2) at time and a half for all hours worked over forty in a given workweek. Plaintiff would also have to prove willfulness to obtain a third year of damages. Plaintiff's Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Agreement alleviates these uncertainties and provides for immediate (and meaningful) recovery instead of the mere possibility of future relief after protracted litigation. Indeed, Defendant vigorously contests whether conditional certification under section 216(b) of the FLSA would be proper given, among other factors, the individualized nature of Plaintiff's and the Potential Plaintiffs' claims. And perhaps most importantly, Defendant has asserted that in the event a violation of the FLSA was found, that Defendant acted at all times in good faith, including upon advice of counsel, thereby seeking to negate the application of liquidated damages or a finding of willfulness. As such, Plaintiffs and the Potential Plaintiffs would be limited to a two-year statute of limitations and their respective unpaid back wages, if any.

Moreover, the endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla* v. *A&R Demolition, Inc.,* No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008). "In evaluating the settlement, the Court [ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after

meaningful discovery." *In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002); *see also Whittington* v. *Taco Bell of Am., Inc.*, No. 10-cv-01884, 2013 WL 6022972 (D. Colo. Nov. 13, 2013). Here, the Parties believe the proposed Agreement is a fair and reasonable resolution of the claims.

**B. The Request for Attorneys' Fees and Costs is Reasonable**

Plaintiff is requesting that this Court approve Plaintiff's Counsel's attorneys' fees and costs as outlined in the Agreement. Specifically, Plaintiff is seeking a contingency payment of 40% of the Maximum Settlement Amount for its total attorneys' fees and costs. *See Vaszlavik v. Storage Technology Corp.*, Civ. No. 95-B-2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%–50% range and is presumptively reasonable."); *see also, e.g.*, *Whittington*, 2013 WL 6022972, at *5–*6 (approving a contingency fee and expense award totaling 39% of the total fund); *Howard v. J&A Services, L.L.C.,* Case No. 1:12-cv-02987-RM-MJW, Docket Nos. 89 and 96 (D. Colo.) (Judge Moore awarding 40% contingency fee plus litigation expenses in FLSA collective action); *Construction, Inc. v. National Council on Compensation*, 1993 WL 355466, at *2 (W.D. Okla. 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis").

Here, the Parties believe the proposed request for attorneys' fees and costs is fair and reasonable. Wage and hour cases, like this one, are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them. *See Qwest*, 625 F.Supp.2d at 1152-53 (D. Colo.) Indeed, Plaintiffs' Counsel was not able to obtain this excellent result without expending a significant amount of time and money, including substantial legal and factual research and engaging in settlement negotiations before, during, and after mediation. Moreover, Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs and the Potential Plaintiffs in this case. Plaintiffs' Counsel, working on contingency, had 100% of the risk of loss, advanced considerable

costs (including the cost of mediation), which if not recovered, would be lost as well as unrecoverable time spent working on this matter.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court issue an order approving the settlement as fair and reasonable as set forth in the Agreement, approving the proposed Notice and directing its distribution and distribution of the settlement proceeds in accordance with this Agreement, approving the Service Award to Plaintiff Samantha Charlot, approving Plaintiff's request for attorneys' fees and litigation costs, and dismissing this Lawsuit with prejudice.

Date: March 11, 2020

Respectfully Submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander**
clif@a2xlaw.com
**Lauren E. Braddy**
lauren@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**THE LAW OFFICES OF BRIAN D. GONZALES**

By: */s/ Brian D. Gonzalez*
**Brian D. Gonzalez**
BGonzales@ColoradoWageLaw.com
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Telephone: (970) 214-0562

***Attorneys for Plaintiffs and the Putative Collective Members***

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with Defendant's counsel of record and they are unopposed to the filing of this Motion and the relief requested herein.

/s/ *Clif Alexander*
Clif Alexander

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Colorado, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander